# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 07-1591
_____

| | | |
|---|---|---|
| William, Irving, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Dave Dormire; Campbell, previously | * | |
| named as Cambell, Captain-JCCC; | * | |
| Daniel Kempker, Functional Unit | * | |
| Manager-JCCC; Ed Rupple, | * | Appeal from the United States |
| Caseworker-JCCC; Nina Branson; Raina | * | District Court for the |
| Martin, previously named as Baina | * | Western District of Missouri. |
| Morgan, Caseworker-JCCC, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Warren Cressey, previously named as | * | |
| Crissey, CO1-JCCC; Thomas Brigance, | * | |
| previously named as Birdgance, | * | |
| CO1-JCCC, | * | |
| | * | |
| Defendants/Appellants, | * | |
| | * | |
| Sgt. Blount, JCCC; Lt. King, JCCC, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Ronetta Hyer, Correctional Officer- | * | |
| JCCC; Leonard Neff, previously named | * | |
| as Neef, Correctional Officer-JCCC; | * | |

Hudson, Correctional Officer-JCCC,     *
                                                                                         *
         Defendant/s Appellants,    *
                                                                                         *
Martin; Gregory Patrick; Ms. Ortbal;    *
- Petis; Dittman; Jay Cassady;        *
Gene James; Webster; - Murphy;      *
R. Corser; - Thomas,           *
                                                                                         *
                 Defendants,    *
                                                                                         *
Debra Reed,         *
                                                                                         *
         Defendant/Appellant,    *
                                                                                         *
Gregory Patrick,         *
                                                                                         *
                 Defendant.    *

_____

Submitted:  November 15, 2007
Filed: March 7, 2008
_____

Before WOLLMAN and BENTON, Circuit Judges, and DOTY,[1] District Judge.
_____

WOLLMAN, Circuit Judge.

William Irving, an inmate in the Missouri penal system, filed suit under 42 U.S.C. § 1983 against several employees of the Jefferson City Correctional Center, alleging multiple violations of his constitutional rights of due process, access to the courts, and freedom from cruel and unusual punishment.  The district court granted

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

-2-

the defendants' motion for summary judgment on the due process and access to courts claims, but denied the defendants' request for qualified immunity on the Eighth Amendment claim. Correctional officers Thomas Brigance, Warren Cressey, Ronetta Hyer, and Leonard Neff remain as defendants, and they appeal the denial of their motion for summary judgment based upon qualified immunity on that claim. We affirm in part, reverse in part, and remand for further proceedings.

I.

Irving alleges that he suffered cruel and unusual punishment at the hands of the defendants over several months in 2004-2005. He alleges that these incidents were in retaliation for his bringing an earlier version of this lawsuit and constituted an effort to intimidate him from proceeding further with it. Specifically, Irving alleges that on November 4, 2004, inmate Ephriam Prewitt requested that Hyer and Neff "pop" open the cell doors so that he could assault Irving. In response to that request, Hyer and Neff opened the doors, whereupon Prewitt rushed out of his cell and into Irving's, where he struck Irving in the face, injuring his jaw and nose. Although Irving received medical treatment only once for the injury, he alleges that he was unable to breathe properly for two months. On December 1, Brigance gave inmate Eric Hessler a razor so that Hessler could use it to make a weapon with which to assault (in Hessler's words) "the nigger next door." Irving overheard this exchange and was able to bring it to the attention of Brigance's supervisor, which caused Brigance to retrieve the razor before Hessler could convert it to a weapon for use against Irving. On March 3, 2005, Brigance offered inmate James Spann fifty dollars and cigarettes if Spann would assault Irving, an offer that Spann did not accept. On April 6, Cressey said that he would have Irving killed if Irving did not drop the lawsuit against him. On April 11 and April 17, Brigance threatened to kill Irving or to have him killed. On April 25, Brigance offered to give inmate Brian Vehlewald cash and cigarettes to attack Irving, an offer that Vehlewald did not accept. A month later, Brigance said that he would find someone to "beat [Irving's] ass." In mid-August, Brigance,

Cressey, and Hyer promised Irving that they would get a chance to "off" him soon. On August 23, Brigance, Cressey, and Neff told Irving, "sooner or later we will get you," and waved a can of mace threateningly at him either at that time or shortly thereafter. On August 30, Brigance offered to pay inmate Jerome Powell to assault Irvin. Instead, Powell warned Irving of Brigance's offer. In September, Hyer told Irving that she wanted him dead, and Brigance told him that he would get what was coming to him. During the time period encompassing these events, Brigance repeatedly told other inmates that Irving was a snitch in an effort to incite them to assault Irving. In October, the district court entered a preliminary injunction moving Irving out of Housing Unit No. 7 of the Jefferson City Correctional Center.

Irving seeks nominal and punitive damages from Brigance, Cressey, and Hyer for their threats and conduct. He seeks compensatory and punitive damages from Hyer and Neff for physical and emotional injuries stemming from the Prewitt incident. Irving also seeks an injunction transferring him to a correctional institution at which none of the defendants are employed.

II.

A denial of a state official's assertion of qualified immunity is immediately appealable. Bearden v. Lemon, 475 F.3d 926, 929 (8th Cir. 2007). We review the denial of qualified immunity *de novo* and consider the evidence in the light most favorable to the nonmoving party. Id. We are not concerned with whether there is a genuine issue of material fact, but rather with the legal question whether any clearly established right was violated under the facts alleged by the nonmoving party. Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005).

A state official is protected from suit by qualified immunity so long as the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Reece v. Groose, 60 F.3d

-4-

487, 491 (8th Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (internal quotation omitted). In analyzing whether an official is entitled to qualified immunity, we ask first whether the alleged facts, when considered in the light most favorable to the injured party, demonstrate that the defendant violated the injured party's rights. Bearden, 475 F.3d at 929 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). If a violation occurred, we then ask whether the constitutional right was clearly established from the perspective of a reasonable official in the defendant's position at the time of the defendant's conduct. Id.

To prove an Eighth Amendment violation, a prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The second requirement is subjective and requires that the inmate prove that the prison officials had a "sufficiently culpable state of mind." Id. Eighth Amendment cases are analyzed in light of the specific claim raised. In excessive force claims, the subjective inquiry is whether the force was used "'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Arnold v. Groose, 109 F.3d 1292, 1298 (8th Cir. 1997) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). In prison conditions claims, which include threats to an inmate's health and safety, the subjective inquiry is whether the prison officials were deliberately indifferent to a serious risk of harm to the inmate. Farmer, 511 U.S. at 834; Arnold, 109 F.3d at 1298.

Irving's allegations satisfy the second, subjective requirement. Viewing these allegations in the light most favorable to Irving, no legitimate penological purpose could have been served by defendants' conduct, and their actions toward Irving demonstrated a state of mind that was not merely deliberately indifferent, but also sadistic and malicious. Thus, the defendants' subjective intent is sufficiently culpable regardless of what type of Eighth Amendment claim is raised.

Determining what satisfies the sufficiently serious injury requirement is also claim-dependent. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). Excessive force claims involve the direct infliction of harm upon inmates. Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically. Id. at 9. Even with such motivation, not every push or shove violates the Constitution, but any use of force greater than *de minimis*, or any use of force that is "repugnant to the conscience of mankind," does. See id. at 9-10 (internal quotation omitted). Routine discomfort is a part of the penalty that criminal offenders must pay, so only extreme conditions that deprive inmates of a "civilized measure of life's necessities" violate the Eighth Amendment. Id. at 8-9. In cases involving a failure to protect an inmate, there must be a "substantial risk of serious harm" to the inmate. See Farmer, 511 U.S. at 834. Prison officials are bound by the Eighth Amendment to take "reasonable measures to guarantee the safety of the inmates." Id. at 832 (internal quotation omitted).

The allegations in this case do not fit neatly into either category because the defendants' malicious and sadistic schemes to use other prisoners to harm Irving resulted in little physical harm to him. See Arnold, 109 F.3d at 1298. In Arnold, we treated a conspiracy between guards and prisoners to murder a prisoner as a prison conditions case and not an excessive force case because it did not arise from a disciplinary situation, and thus the prison officials were not entitled to the protection afforded by the higher subjective intent requirement. Id. Accordingly, we likewise treat this case as a conditions of confinement case.

Irving alleges that he suffered sufficiently serious injury in three ways. First, he suffered harm because Hyer and Neff opened the cell doors to enable Prewitt to attack him. Second, he suffered prolonged fear for his life as a result of the defendants' death threats and their conduct that made those threats credible. Third, he suffered the substantial risk of serious harm from other inmates as a result of being publicly and repeatedly labeled by Brigance as a snitch.

### A. Prewitt Incident

Irving charges that Hyer and Neff failed to protect him by opening the cell doors so that Prewitt could attack him. To prove a sufficiently serious deprivation in failure to protect claims, an inmate must prove that prison officials caused him to be "incarcerated under conditions posing a substantial risk of serious harm." Young v. Selk, 508 F.3d 868, 872 (8th Cir. 2007) (internal quotation omitted); see also Taylor v. Crawford, 487 F.3d 1072, 1079-80 (8th Cir. 2007) (stating that a substantial risk of unnecessary infliction of pain is an unconstitutional condition of confinement). We further note that "gratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objectiv[e]." Farmer, 511 U.S. at 833 (alteration in original, internal quotation omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Id. at 834 (internal quotation omitted).

The allegation that Hyer and Neff opened the cell doors so as to enable Prewitt to attack Irving portrays unjustifiable, actionable inmate-endangering conduct. We have previously declared it "appalling" that prison officials would punish prisoners for filing lawsuits, as is alleged here. See Martin, 742 F.2d at 472-73. Hyer and Neff not only failed to take reasonable measures to guarantee Irving's safety as required by the Eighth Amendment, see Farmer, 511 U.S. at 832, they intentionally brought danger to him. They themselves were a large part of the "conditions posing a substantial risk of serious harm" to Irving. See id. at 834. Hyer and Neff concede that

in light of their alleged behavior with respect to the Prewitt incident, they are not entitled to qualified immunity.  See, e.g., Young, 508 F.3d at 870-71, 875 (upholding the denial of qualified immunity to guards who ignored an inmate's request to be protected from his new cellmate, who then attacked him); Newman v. Holmes, 122 F.3d 650, 653 (8th Cir. 1997) (upholding a jury's finding that a guard who opened the door to an isolated confinement cell created, and was deliberately indifferent to, an excessive risk of harm to other inmates).

Despite this concession, Hyer and Neff assert that Irving's claimed injuries do not support a § 1983 claim.  Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation.  Carey v. Piphus, 435 U.S. 247, 253-55 (1978).  Claims under the Eighth Amendment require a compensable injury to be greater than *de minimis*.  Cummings v. Malone, 995 F.2d 817, 822-23 (8th Cir. 1993); see Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996).  In Prater, inmate Penn struck inmate Prater in the face, loosening some of his teeth, after Prater had complained to prison officials that Penn had threatened him.  Id.  The prison officials in Prater were not deliberately indifferent, and we considered it a close question (one we did not decide) whether the deprivation of protection and the resulting injury was sufficient to establish the objective requirement in a failure to protect claim, i.e., whether the injury was greater than *de minimis*.  See id.  No clear line divides *de minimis* injuries from others.  Compare Hudson, 503 U.S. at 10 (a cracked dental plate, loosened teeth, bruises, and swelling were more than *de minimis*), and Foulk v. Charrier, 262 F.3d 687, 692, 700-01 (8th Cir. 2001) (use of pepper spray without cause was greater than *de minimis*), and Hickey v. Reeder, 12 F.3d 754, 757 (8th Cir. 1993) (stunning a prisoner with a stun gun without sufficient cause was greater than *de minimis*), with Jones v. Shields, 207 F.3d 491, 496-97 (8th Cir. 2000) (use of pepper spray on a large inmate who refused to comply and who immediately received medical treatment for the spray was *de minimis* and was not done with sadistic or malicious intent), and Wyatt v. Delaney, 818 F.2d 21, 23 (8th Cir. 1987) (a light, accidental blow to the face that

caused two small scratches inside the prisoner's mouth was *de minimis*). Again accepting Irving's allegation as true, a blow to the face that resulted in a two-month period of difficulty in breathing is greater than *de minimis* and therefore sufficiently serious to justify a damages award, however nominal the amount.

Accordingly, because the alleged deprivation of Irving's right to be free from assault by fellow inmates was sufficiently serious to support a failure to protect claim, the district court properly denied qualified immunity to Hyer and Neff with respect to this incident.

## B. Death Threats

The defendants argue that verbal threats are normally insufficient to violate the Constitution. Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992). We have made an exception, however, when the state official engaged in a "brutal" and "wanton act of cruelty" even though no physical harm was suffered. Id. (quoting Burton v. Livingston, 791 F.2d 97, 99-100 (8th Cir. 1986)). In Burton, the officer pointed a gun at Burton's head and told him to run so that the officer would have an excuse to shoot him. Id. at 99. Holding that Burton had stated a constitutional claim, id. at 101 & n.2, we observed that "a prisoner retains at least the right to be free from the terror of instant and unexpected death at the whim of his . . . custodians." Id. at 100. Racial bigotry and anger at the prisoner's use of the legal system were implicated in the incident. Id. at 101 & n.1. In Hopson, we held to be insufficient for Eighth Amendment claim purposes the allegation that officers seated in the front seat of a patrol car threatened to knock out the back-seat occupant's teeth if he did not start talking. 961 F.2d at 1378. The officers did not threaten Hopson's life, nor did they raise any fist or weapon to Hopson or otherwise take any action to make the threat seem credible. Id. at 1378-79. In Arnold, a conspiracy between guards and inmates to kill Arnold was actionable only after an aborted attempt on Arnold's life. 109 F.3d at 1296.

Other circuits have also held that death threats are actionable. See Chandler v. D.C. Dept. of Corr., 145 F.3d 1355, 1360 (D.C. Cir. 1998); Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978). In Chandler, the D.C. Circuit held that an allegation of a single death threat by a guard to an inmate without any resulting physical harm stated an Eighth Amendment claim. 145 F.3d at 1361 ("[T]he risk that [the guard's] threat might be carried out . . . could amount to a sufficiently substantial risk of serious damage to [the inmate's] future health to be actionable as an unconstitutional condition of confinement." (internal quotations and citations omitted)). Chandler recognized that "a threat accompanied by conduct supporting the credibility of the threat" could violate the Eighth Amendment. Id. In Hudspeth, a prisoner sued a guard, who then ordered the prisoner to drop the suit or else he would be transferred to a work detail that was guarded with guns and would be "accidentally" shot. 584 F.2d at 1348. The prisoner was transferred as promised, though never shot. Id. The Fourth Circuit found that "intentionally placing Hudspeth in fear for his life if he pressed his court actions . . . would inflict such suffering as to amount to unconstitutional punishment." Id.

We conclude that, when viewed in the light of their retaliatory nature, their objectively credible basis, and their fear-inducing result, the death threats allegedly made by Brigance form the basis of an injury sufficiently serious to implicate the Eighth Amendment.

## 1. Brigance

Regarding the allegations concerning Brigance's conduct, the present case is more like Burton than Hopson. Again accepting Irving's allegations as true, Brigance made several threats to kill Irving, to have him killed, or to have him beaten. Brigance made three unsuccessful offers of payment to inmates to assault Irving. Brigance labeled Irving a snitch in an effort to induce inmates to attack him, and even armed Hessler with a razor blade for use in such an attempt. These are not instances of mere

verbal abuse resulting only in hurt feelings, but rather are more properly analogized to a case in which "a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized [the prisoner] with threats of death." Burton, 791 F.2d at 100-01. Although Brigance's death threats to Irving were less immediate than, and perhaps not as terror-inducing as the threat in Burton, their ongoing nature, combined with Brigance's concrete, affirmative efforts to persuade other inmates to assault Irving and his attempt to arm Irving's enemy, makes the claims sufficiently comparable. Irving's case is stronger than that of the inmate in Hudspeth because of the greater number of threats made and the stronger confirmations of the threats' credibility. As we held almost a quarter century ago, "Subjecting prisoners to . . . constant fear of such violence[] shocks modern sensibilities and serves no legitimate penological purpose." Martin v. White, 742 F.2d 469, 474 (8th Cir. 1984). The repeated and credible threats against Irving, if proved to be true, constituted brutal and wanton acts of cruelty that served no legitimate penological purpose and posed a substantial risk of serious harm to Irving's future health.

Defendants are properly denied qualified immunity only if the constitutional right violated was clearly established at the time of the offense. Reece, 60 F.3d at 491. Defendants must be put on "fair warning" by the state of the law at the time of the conduct. Hope v. Pelzer, 536 U.S. 730, 741(2002). Prior cases need not be fundamentally or materially similar to provide fair warning. Id. An officer who acts so far beyond the bounds of his official duties that "the rationale underlying qualified immunity is inapplicable" can have fair warning even if there is no factually similar case. Hawkins v. Holloway, 316 F.3d 777, 788 (8th Cir. 2003). It was clearly established by Burton that a guard is not permitted to threaten an inmate with death by means readily at hand. It should have likewise been clear that a guard may not threaten an inmate with death by means of arming, bribing, and inciting other inmates to accomplish that which the guard may not do directly. No reasonable prison guard

would have believed that no constitutional right would be violated by such conduct, and thus the district court correctly denied qualified immunity to Brigance.

## 2. Cressey, Hyer, and Neff

The alleged death threats made by the other defendants are less objectively credible. Cressey is alleged to have made one death threat in April and later to have been in two groups of guards (first with Brigance and Hyer, then with Brigance and Neff) in which someone made threats against Irving (to "off" and to "get" him) in August. Although such behavior, if it occurred, may properly be the subject of disciplinary measures or other remedies, it did not constitute cruel and unusual punishment. There is no indication from Cressey's conduct at the time of the threats or at any other time that they were credible. These alleged threats should have no place in our prisons, but neither did they violate the Constitution.

Neff's only alleged verbal threat was made as part of one of the above-mentioned groups, and he also allegedly threatened Irving with a can of mace. Hyer's first alleged threat is virtually identical to Neff's—both were made with Brigance and Cressey. Hyer is also alleged to have made an additional statement in September 2005 that she wanted Irving dead, which she gave as her reason for denying his request for an ink pen. Hyer and Neff were both involved in the Prewitt incident more than nine months earlier. The Prewitt incident might have been sufficient to render their later threats credible had those threats occurred closer in time. We assume that Hyer's additional statement was a threat, but it is insufficiently credible as a matter of law. Accordingly, Neff's and Hyer's death threats, however reprehensible and unjustified, did not rise to the level of being objectively credible.

## C. Labeled a Snitch

Irving argues that Brigance was deliberately indifferent to his safety when he falsely labeled Irving a "snitch" or a "rat." Prison officials are bound by the Eighth Amendment to take "reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832 (internal quotation omitted). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. at 833 (omission in original, citation omitted). They also have a duty to protect inmates from unreasonable conditions that pose "a substantial risk of serious harm." Young, 508 F.3d at 872 (quoting Farmer, 511 U.S. at 834) (internal quotation marks omitted). The Eighth Amendment prohibits the foreseeable and unnecessary risk of the gratuitous and wanton infliction of pain. Taylor v. Crawford, 487 F.3d 1072, 1079-80 (8th Cir. 2007).

Although we have previously recognized that an inmate who is considered to be a snitch is in danger of being assaulted or killed by other inmates, we have not specifically dealt with the issue presented by this case. See Reece v. Groose, 60 F.3d 487, 488 (8th Cir. 1995). At least three other circuits have agreed with Irving's position that labeling an inmate a snitch violates the guard's duty to protect inmates. See Benefield v. McDowall, 241 F.3d 1267, 1271-72 (10th Cir. 2001) (adhering to its holding in Northington v. Marin, 102 F.3d 1564 (10th Cir.1996)); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989); Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984). Likewise, another circuit is at least sympathetic to such a contention. See Gullatte v. Potts, 654 F.2d 1007, 1009-12 (5th Cir. 1981) (remanding to determine whether the defendant knew or should have known that an inmate labeled a snitch is in danger and whether the defendant took reasonable steps to protect the snitch from danger).

Brigance points out that the Seventh Circuit has not looked with favor upon Eighth Amendment claims involving the protection to which a snitch is entitled. See

Doe v. Welborn, 110 F.3d 520, 525 (7th Cir. 1997) (a snitch's fear of attack never materialized and therefore was not a violation of the Eighth Amendment). Citing Doe, an unpublished opinion of the Seventh Circuit held that "[f]ailure to protect from actual physical injury, not failure to protect from the fear of injury, is what violates the Eighth Amendment." Brown v. Ellis, No. 97-1873, 1999 WL 197222, *2 (7th Cir. Mar. 26, 1999).

It is true that we have on occasion afforded the protection of qualified immunity in situations in which a split of authority exists on the constitutional question at issue, see, e.g., Mo. Prot. & Advocacy Serv. v. Mo. Dep't of Mental Health, 447 F.3d 1021, 1025 (8th Cir. 2006). Nevertheless, and notwithstanding the lack of a decision squarely on point within our circuit, we conclude that, given the clear weight of authority in the circuits that have ruled on the question, Brigance was on fair notice that to falsely label an inmate a snitch is to unreasonably subject that inmate to the threat of a substantial risk of serious harm at the hands of his fellow inmates. After all, who better knows the opprobrium and consequent effect thereof that attaches to the label of snitch than those who work daily within the inmate population. Thus, we hold that a reasonable prison guard in Brigance's position would have known that to label Irving a snitch would violate his constitutional right to protection from harm. Accordingly, the district court properly denied qualified immunity to Brigance on this aspect of Irving's case.

### III.

We affirm that portion of the district court's order which denied qualified immunity to Brigance with respect to the death threats and to the labeling of Irving as a snitch, as well as that portion which denied qualified immunity to Hyer and Neff regarding the Prewitt incident. We reverse that portion of the order which denied qualified immunity to Cressey, Hyer, and Neff with respect to the death threats they made.

-14-

The case is remanded to the district court for the entry of an amended order and for further proceedings on the remaining claims.

_____