# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3416

_____

Marvin Reeves

*Plaintiff - Appellee*

v.

Lt. Jacob King

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: September 11, 2014
Filed: December 16, 2014

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Marvin Reeves brought this 42 U.S.C. § 1983 action against Lieutenant Jacob King, alleging a violation of his Eighth Amendment rights. King moved for summary

judgment based on qualified immunity, which the district court[1] denied.  King brings this interlocutory appeal.  We affirm.

## I

"We state the facts in the light most favorable to the plaintiff and in accordance with the factual findings made by the district court."  Handt v. Lynch, 681 F.3d 939, 941 (8th Cir. 2012).

Reeves was an inmate at the Ouachita River Unit in Malvern, Arkansas, housed in the isolation unit.  After providing information to correctional officers about a prison nurse who was bringing contraband into the facility, Reeves endured retaliation from other correctional officers and inmates.  Specifically, while Lieutenant King and another correctional officer made security rounds in the isolation unit, Reeves attempted to initiate a conversation with them.  Lieutenant King responded to Reeves by commenting, "Go ahead and snitch to the major like you did to him on the nurse and he'll get back with you later."  Lieutenant King made this comment in the presence of numerous inmates, and Reeves suffered emotional distress and a fear of retaliation as a result of the comment.  The following day, Arkansas Department of Corrections transferred Reeves to the East Arkansas Regional Unit.

Reeves then initiated this § 1983 action, alleging Lieutenant King violated his Eighth Amendment rights by calling him a snitch.  On the basis of qualified immunity, Lieutenant King brought a motion for summary judgment.  The magistrate determined Lieutenant King was not entitled to qualified immunity because Eighth Circuit precedent provides a detention officer violates his duty to protect an inmate by labeling that inmate as a snitch.  Over Lieutenant King's objection, the district court

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, adopting the report and recommendations of the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas.

adopted the magistrate's recommendations and denied the motion for summary judgment. Lieutenant King now appeals.

II

This court ordinarily lacks jurisdiction to immediately review denials of summary judgment because they are not final decisions. Small v. McCrystal, 708 F.3d 997, 1002 (8th Cir. 2013). For a denial of qualified immunity, however, this court may immediately review the order under the collateral order doctrine. Id. "Jurisdiction extends to the 'purely legal' issue of whether the facts, taken most favorably to the plaintiff[], support a finding that the [correctional officers] violated their clearly established constitutional rights." Id. (quoting McCaster v. Clausen, 684 F.3d 740, 745-46 (8th Cir. 2012)).

"'We review a district court's qualified immunity determination on summary judgment *de novo*[.]'" Shannon v. Koehler, 616 F.3d 855, 861-62 (8th Cir. 2010) (quoting Langford v. Norris, 614 F.3d 445, 459 (8th Cir. 2010)). King is "entitled to qualified immunity unless (1) 'the facts alleged or shown, construed in the light most favorable to [Reeves], establish a violation of a constitutional or statutory right,' *and* (2) the 'right was clearly established as of [the date of the alleged violation], such that a reasonable official would have known that his actions were unlawful.'" Edwards v. Byrd, 750 F.3d 728, 731-32 (8th Cir. 2014) (second alteration in original) (quoting Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009)).

Because Reeves was a prisoner, his relevant constitutional rights arise under the Eighth Amendment. The Eighth Amendment binds prison officials to take "'reasonable measures to guarantee the safety of the inmates.'" Irving v. Dormire, 519 F.3d 441, 450 (8th Cir. 2008) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). They also "have a duty . . . to protect prisoners from violence at the hands of other prisoners" and "to protect inmates from unreasonable conditions that pose a

substantial risk of serious harm." Id. at 450-51 (quotation marks and citations omitted).

In Irving, 519 F.3d at 451, we affirmed the district court's order denying qualified immunity because it was clearly established at that time that labeling an inmate a snitch would unreasonably subject the inmate to a substantial risk of harm from other inmates based on Eighth Circuit case law concluding an inmate who was labeled as a snitch was in danger of assault by other inmates and case law from other circuits holding a correctional officer violates his duty to protect an inmate from harm when he labels the inmate a snitch to other inmates. Then, in Norman v. Schuetzle, 585 F.3d 1097, 1111 (8th Cir. 2009), we reversed a denial of qualified immunity and explained labeling an inmate a snitch for complaining about a prison official, not another inmate, did not create the same danger of retaliation by an inmate. In a separate opinion in Williams v. Horner, 403 F. App'x 138, 142 n.3 (8th Cir. 2010) (per curiam), Judge Colloton concluded it was not clearly established that "an inmate faces a substantial risk of serious harm because other inmates know that he has filed grievances (i.e., 'snitched') *against correctional officers for alleged mistreatment of inmates*."

Following this precedent, we must determine whether King was on fair notice in the fall of 2010 that his actions of stating to Reeves that he should "snitch to the major like [he] did to him on the nurse" would unreasonably subject Reeves to a threat of substantial harm at the hands of other inmates. King argues this case is most akin to Norman and the footnote in Williams because Reeves's comment labeled King a snitch for complaining about a correctional officer, the prison nurse.

We conclude, however, Reeves's actions are distinguishable from Norman. In Norman, we decided Norman was not at a substantial risk of harm and Wrolstad, the correctional officer, was not on notice his actions placed Norman at a substantial risk because the events in question occurred long prior to the decision in Irving. Norman,

585 F.3d at 1110. Further, Wrolstad did not label Norman a snitch; rather, Wrolstad showed other inmates kites Norman had written complaining about the way Wrolstad ran the restaurant program. Id. at 1110-11. Norman had also voiced his complaints to other inmates himself and did not fear Wrolstad's actions placed him in danger. Id. at 1111. This case is also unlike the scenario contemplated in the Williams separate opinion in which an inmate merely filed grievances against a correctional officer for the alleged mistreatment of inmates.

By contrast, Reeves, although reporting the actions of a correctional officer, reported the actions of a prison nurse who was engaging in conduct which was beneficial to other inmates. Accordingly, as a result of his actions, Reeves also acted in contravention to the interests of other inmates by exposing that the prison nurse was bringing contraband into the facility. The focus of "snitch" cases is the possibility of retaliation by other inmates. See Irving, 519 F.3d at 451 ("Brigance was on fair notice that to falsely label an inmate a snitch is to unreasonably subject that inmate to the threat of a substantial risk of serious harm at the hands of his fellow inmates."); Norman, 585 F.3d at 1111 ("In contrast, Norman . . . was not in danger of retaliation by an inmate."). Moreover, Lieutenant King made his statement in the presence of other inmates and specifically referenced Reeves's actions in regard to the prison nurse, informing other inmates Reeves was the person who exposed the prison nurse's actions. As a result of Lieutenant King's actions, Reeves, although housed in isolation and moved the following day, allegedly suffered emotional distress and a fear of retaliation. The district court determined there were disputed factual issues concerning whether Lieutenant King called Reeves a "snitch" in front of other inmates, and whether Reeves was in the company of other inmates after the alleged labeling by Lieutenant King. Taking the facts in the light most favorable to Reeves, therefore, Lieutenant King's actions subjected Reeves to the threat of a substantial risk of serious harm at the hands of his fellow inmates.

Further, existing case law in 2010 sufficiently gave Lieutenant King fair warning that his alleged actions violated Reeves's constitutional rights. See Hope v. Pelzer, 536 U.S. 730, 741 (2002). Lieutenant King again cites Norman and Williams, contending that reporting on a correctional officer does not support Reeves's claim it was clearly established that Lieutenant King's actions violated Reeves's constitutional rights. Lieutenant King's reliance on Norman, however, stops short of the full explanation offered by the court. The court did not merely state because Norman complained on a correctional officer, his constitutional claim was not recognized, or create a categorical exception to reporting on correctional officers. Rather, the court went further to state Norman "was not in danger of retaliation by an inmate" and then explained Norman had complained himself to other inmates and did not fear retaliation. Norman, 585 F.3d at 1111. The focus, therefore, is less on the specific person but on the response to the statement by the inmates. "[W]e look to the specific actions of the officer to determine whether it was clearly established that his actions violated the inmate's rights." Id. (citing Pearson v. Callahan, 555 U.S. 223, 237 (2009)). Similarly, disclosure that an inmate filed grievances against correctional officers for the mistreatment of inmates does not place the reporting inmate at a substantial risk of serious harm, given that inmates are unlikely to retaliate against a fellow inmate for seeking to end abuse by prison guards. See Williams, 403 F. App'x at 142 n.3 (opinion concurring in part and dissenting in part). We conclude a reasonable correctional officer in Lieutenant King's position would have known, based on Irving and Norman, labeling Reeves a snitch for reporting on a prison nurse who was bringing contraband into the prison would violate his constitutional right to protection from harm. Accordingly, the district court properly denied qualified immunity to Lieutenant King.

III

Accordingly, we affirm the district court.

_____