APPEALS COURT 
 
 DARIUS GIBSON vs. DEPARTMENT OF CORRECTION & others.[1]

 
 Docket:
 23-P-1048
 
 
 Dates:
 November 21, 2024 – October 22, 2025
 
 
 Present:
 Massing, Henry, & Grant, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Commissioner of Correction. Massachusetts Civil Rights Act. Administrative Law, Regulations. Regulation. Declaratory Relief. Practice, Civil, Declaratory proceeding, Injunctive relief, Motion to dismiss, Standing. Governmental Immunity. Constitutional Law, Imprisonment, Regulation, Access to court proceedings, Cruel and unusual punishment.
 
 

  
 
      Civil action commenced in the Superior Court Department on June 30, 2023.
      A motion to dismiss was heard by Janet Kenton-Walker, J.
Darius Gibson, pro se.
      Daryl F. Glazer for Department of Correction & others.
      HENRY, J.  Darius Gibson is an incarcerated person in the custody of the Department of Correction (DOC).[2]  Gibson appeals from a judgment dismissing her complaint in which she sought declaratory and injunctive relief and damages against the DOC and DOC officials, including Carol Mici, the former Commissioner of Correction (commissioner); Matthew Divris, the superintendent of the North Central Correctional Institution at Gardner (NCCI-Gardner); and Carolyn Murphy, the librarian at NCCI-Gardner.[3]
      Gibson's complaint alleged, among other things, that prison officials wrongfully denied her photocopies of documents concerning a public records request seeking evidence to challenge her conviction, coerced her into becoming a prison informant, and labeled her a "rat snitch" in front of other inmates.  We conclude that the complaint states claims sufficient to withstand a motion to dismiss (a) that the DOC regulation, 103 Code Mass. Regs. §§ 478.00 (2017), and the corresponding NCCI-Gardner policy, dated August 2022 (NCCI-Gardner policy), governing library services and photocopying procedures are being interpreted to deny inmates access to the courts; and (b) for damages under the Massachusetts Civil Rights Act (MCRA), G. L. c. 12, §§ 11H-11I, against Divris.  In all other respects, the judgment is affirmed.
      Background.  We set forth the facts as alleged in the complaint, which for the purposes of this appeal we accept as true, and draw "all reasonable inferences in the plaintiff['s] favor."  Haas v. Commissioner of Correction, 103 Mass. App. Ct. 1, 3 (2023).
      Gibson is serving a life sentence for murder in the first degree.  In pursuit of a claim that her trial lawyer was ineffective for not challenging the Commonwealth's ballistics evidence, Gibson hired a ballistics expert.  Gibson then sent a written public records request to the Boston police department (department) to obtain copies of "the ballistic evidence."[4]  See G. L. c. 66, § 10.  Gibson received a response from the department (police response) stating that the "ballistic evidence" would be mailed to her.  Gibson never received the ballistics evidence.
      Gibson then prepared a petition to the supervisor of public records seeking an order that the department "provide the reports" to her.  Under 950 Code Mass. Regs. § 32.08(1)(f) (2021), Gibson was required to include with her petition photocopies "of all correspondence associated with the petition," including her letter or e-mail message requesting the public records and all police responses.
      On December 14, 2022, Gibson submitted the petition and the required documentation for photocopying to Murphy, the NCCI-Gardner librarian.  Gibson's request for photocopies was for a legal purpose, because, potentially, Gibson could file a motion for a new trial based on what the ballistics report showed.  Murphy declined to provide Gibson with the photocopies.  The defendants' actual policy is to provide photocopies to inmates only in connection with litigation challenging a criminal conviction or conditions of confinement, and not in connection with other civil matters, including public records requests.  Gibson then asked if Murphy would photocopy a grievance about Murphy's denial of the request for photocopies.  In response, Murphy said, loudly in front of other inmates, "[G]o ahead and rat on me rat snitch it does not do anything."
      The next day, Gibson spoke with Divris at "staff access" about the photocopies, explaining that she needed them to obtain evidence to exonerate herself.  Divris said, "[H]ow much do you want your freedom[?]  What are you going to do for me[?]"  Divris then asked Gibson to be an informant.  After Gibson agreed, Gibson was provided with the photocopies.  Gibson rescinded her agreement to be an informant shortly thereafter and there is no allegation or indication in the record that she acted as an informant.
      Gibson alleges that she will need to petition the supervisor of public records in the future and has no way to obtain copies.  She also alleges that the copies are for a legal purpose:  to obtain evidence in support of a potential motion for a new trial.  In the alternative, Gibson alleges that the definition of "Original Legal Documents" in 103 Code Mass. Regs. § 478.05 (2017)[5] discriminates against her and other inmates who seek access to the courts for litigation other than challenging a criminal conviction or conditions of confinement.  Gibson alleges that she has experienced "fear, paranoia, loss of appetite, accumulation of disciplinary reports[, and] delay in legal filings."
      Discussion.  "We review the allowance of a motion to dismiss de novo" (citation omitted).  Verveine Corp. v. Strathmore Ins. Co., 489 Mass. 534, 538 (2022).  "Accepting the facts alleged in the complaint as true, we inquire whether the factual allegations are sufficient, as a matter of law, to . . . plausibly suggest an entitlement to relief" (quotation and citation omitted).  FBT Everett Realty, LLC v. Massachusetts Gaming Comm'n, 489 Mass. 702, 718 (2022).  In reviewing Gibson's claims, we are mindful that "there is no requirement that a complaint state the correct substantive theory of the case," and that "a complaint is not subject to dismissal if it would support relief on any theory of law" (citation omitted).  Gallant v. Worcester, 383 Mass. 707, 709-710 (1981).  See Lamoureux v. Superintendent, Mass. Correctional Inst., Walpole, 390 Mass. 409, 410 n.4 (1983) (pro se filings are interpreted liberally where complaint presents cognizable legal theory).
      1.  Claims for declaratory and injunctive relief.  Gibson requested declaratory and injunctive relief under G. L. c. 231A, §§ 1-2, to challenge the constitutionality of the DOC regulation regarding library services and the NCCI-Gardner policy regarding photocopying procedure.[6]  Specifically, Gibson argued that the DOC regulation and the NCCI-Gardner policy arbitrarily and capriciously prohibited the photocopying of petitions for information and responses and infringed upon her right of access to the courts.
      a.  Mootness.  The defendants argue that Gibson's claims for declaratory and injunctive relief are moot because Gibson has since been transferred from NCCI-Gardner to the Souza-Baranowski Correctional Center.  We disagree.  "A case becomes moot . . . 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'" (citation omitted).  LaChance v. Commissioner of Correction, 475 Mass. 757, 766 (2016).  Although Gibson is no longer incarcerated at NCCI-Gardner, the defendants have not demonstrated that retransfer to NCCI-Gardner "cannot reasonably be expected to recur" (quotation and citation omitted).[7]  Federal Bur. of Investigation v. Fikre, 601 U.S. 234, 241 (2024).  Moreover, the challenged DOC regulation still applies to her, and she has alleged that it may limit her access to copies in the future.  Accordingly, Gibson continues "to have a real stake in the outcome" of her claims.  Cantell v. Commissioner of Correction, 475 Mass. 745, 754 n.17 (2016) (prisoners' claims concerning special management unit conditions were not mooted by transfer where prisoners "remain[ed] incarcerated" and subject to risk of retransfer).  Therefore, Gibson's claims for declaratory and injunctive relief are not moot.
      b.  Actual controversy and standing.  For a claim of declaratory relief to survive a motion to dismiss, there must be an actual controversy, and the plaintiff must have standing.  See Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 292 (1977).  To establish an actual controversy, "we require only that the pleading set forth a real dispute caused by the assertion by one party of a legal relation or status or right in which [s]he has a definite interest and the denial of such assertion by the other party, where the circumstances . . . indicate that, unless a determination is had, subsequent litigation as to the identical subject matter will ensue" (quotation and citation omitted).  Boston v. Keene Corp., 406 Mass. 301, 304 (1989) (Keene Corp.).  Claims challenging the interpretation of a statute or regulation "are appropriately brought under the Declaratory Judgment Act."  Henderson v. Commissioners of Barnstable County, 49 Mass. App. Ct. 455, 458 (2000).  See G. L. c. 231A, §§ 1, 2.[8]  "A party has standing when it can allege an injury within the area of concern of the statute, regulatory scheme, or constitutional guarantee under which the injurious action has occurred."  Doe No. 1 v. Secretary of Educ., 479 Mass. 375, 386 (2018).
      Here, an actual controversy exists because Gibson and the DOC dispute the constitutionality of the DOC's interpretation of its regulation and prison policy to not entitle prisoners to photocopies of petitions to the supervisor of public records, and Gibson was denied photocopies under the regulation.  See Kain v. Department of Envtl. Protection, 474 Mass. 278, 281 (2016); Santana v. Registrars of Voters of Worcester, 384 Mass. 487, 493 (1981), S.C., 390 Mass. 353 (1983).  See also Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc., 373 Mass. at 293 (finding actual controversy where there was "a dispute over an official interpretation of a statute and the validity of a regulation promulgated pursuant to that interpretation").  That Gibson ultimately received the photocopies does not extinguish the actual controversy, as "a party seeking declaratory judgment need not demonstrate an actual impairment of rights."  Keene Corp., 406 Mass. at 304.  See Lewis v. Casey, 518 U.S. 343, 350-351 (1996) (inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered [her] efforts to pursue a legal claim" to prove actual injury in violation of her right to court access).  Because the defendants interpret the DOC regulation and the NCCI-Gardner policy to exclude photocopies of petitions to the supervisor of public records, "subsequent litigation as to the identical subject matter will ensue" when Gibson, or another inmate, attempts to obtain such photocopies in the future (citation omitted).  Keene Corp., supra.
      Moreover, Gibson has standing to challenge the DOC regulation and the NCCI-Gardner policy, as she sufficiently alleged an injury within the area of concern of the constitutional guarantee of access to the courts.  Section (III)(C)(1) of the NCCI-Gardner policy that Gibson challenges provides as follows:
"Library photocopy services are for the purposes of reproducing original legal documents to be filed:
* With the Courts in support of civil litigation as it relates to the condition of one's confinement;
* For criminal litigation related to one's sentence; and
* Other original legal documents upon showing of legal need.
"In all instances, the copies must be for purposes of mailing to:
* The courts
* Attorneys representing the inmate and/or other parties to said litigation; and/or
* Named defendants and plaintiffs to said litigation."  (Emphases added.)
The term "original legal documents" in turn is defined in 103 Code Mass. Regs. § 478.05 as "[o]riginal documents to be filed with the Courts in support of criminal litigation challenging the inmate's sentence, directly or collaterally, or in support of civil litigation challenging the conditions of his or her confinement."  To the extent Gibson was constitutionally entitled to these photocopies, such a hindrance on her ability to obtain them due to the interpretation of the DOC regulation and the NCCI-Gardner policy no doubt falls within the "area of concern" of the constitutional provisions protecting the right of access to the courts.  Doe No. 1, 479 Mass. at 386.
      c.  Constitutionality of the DOC regulation and the NCCI-Gardner policy.  Gibson alleged sufficient facts to support her claim for declaratory and injunctive relief.  It is plausible that the DOC regulation and the NCCI-Gardner policy may be unconstitutional insofar as they are interpreted in a manner that denies inmates photocopies of petitions for public records for information to challenge their convictions.  "[I]nmates have a Federal constitutional right of access to the courts, at least to pursue nonfrivolous claims challenging their convictions or the conditions of their confinement."  Matthews v. Commissioner of Correction, 449 Mass. 1021, 1023 (2007), citing Lewis, 518 U.S. at 350, 353-356.  "The tools [that the constitutional right of access to the courts] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  Lewis, supra at 355.  See generally Puleio v. Commissioner of Correction, 52 Mass. App. Ct. 302, 311 (2001).  Here, the purpose of Gibson's petition was to secure evidence to challenge her conviction.  Indeed, public records requests are sometimes used to obtain evidence in support of a motion for a new trial.[9]  By denying inmates photocopies of documents necessary to pursue public records requests related to their criminal convictions, the DOC regulation and the NCCI-Gardner policy may hinder their efforts in pursuing legal claims.  See Lewis, supra at 351.
      The DOC argues that it would be overly burdensome to allow photocopies of required documentation in support of petitions for review of the denial of public records requests seeking evidence needed to challenge inmates' convictions.  However, section (III)(C)(1) of the NCCI-Gardner policy already allows photocopying of "original legal documents to be filed . . . [f]or criminal litigation related to one's sentence."  As does the DOC library services regulation.  See 103 Code Mass. Regs. §§ 478.05, 478.10(4)(a) (2017).  Moreover, the NCCI-Gardner policy also allows inmates copies of "[o]ther original legal documents upon [a] showing of legal need."  See supra.
      To pursue her public records request, Gibson's alternatives to photocopying would have meant either parting with her only copy of the petition and the police response or commencing litigation to obtain the evidence she needed.  See G. L. c. 66, § 10A (c).  Without deciding the merits, "sufficient questions remain" as to whether use of the DOC regulation and the NCCI-Gardner policy to deny photocopies in support of such petitions is "reasonably related to a legitimate penological interest."  Haas, 103 Mass. App. Ct. at 17-19 (holding that dismissal of constitutional challenge to prison regulation was not warranted at that stage of litigation where "sufficient questions remain[ed]" including whether there existed legitimate penological interest).
      Therefore, Gibson alleged sufficient facts in support of her constitutional challenge to the DOC regulation and the NCCI-Gardner policy.  Accordingly, her requests for declaratory and injunctive relief should not have been dismissed.
      2.  Claims for damages.  a.  Denial of photocopies.  To the extent that Gibson's complaint seeks damages for the denial of photocopies for a matter of days, it was properly dismissed.  To demonstrate actual injury in this particular instance, Gibson was required to demonstrate that the temporary lack of access to photocopies "prevented or hindered" her ability to proceed with her public records petition to the supervisor of public records.  Puleio, 52 Mass. App. Ct. at 311.  In these circumstances, Gibson has failed to allege that she suffered any actual harm from the temporary denial of photocopies.  See id. at 311-312.
      b.  Claims for damages against the defendants in their official capacities.  "[T]o avoid a State's sovereign immunity to a damages suit, a plaintiff must sue the State official in his individual and not his official capacity."  O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 141 n.13 (1993) (holding that damages are only available under 42 U.S.C. § 1983 against State officials if sued in their individual capacities); Howcroft v. Peabody, 51 Mass. App. Ct. 573, 593, 596 (2001) (affirming summary judgment in favor of individual defendants sued in their official capacities under MCRA and for intentional infliction of emotional distress).  Therefore, to the extent that Gibson sued the commissioner, Divris, and Murphy for damages in their official capacities, we affirm the dismissal of these claims.
      c.  Claims against Mici.  Gibson did not allege any facts as to Mici's involvement in the matter.  Therefore, we affirm the dismissal of any claims against Mici in her individual capacity for failure to allege sufficient facts.  See Verveine Corp., 489 Mass. at 538.
      d.  MCRA claim.  Gibson sought damages under the MCRA against Divris for withholding photocopies until she agreed to be an informant.  "To establish a claim under the MCRA the plaintiff must prove that '(1) [her] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) [has] been interfered with, or attempted to be interfered with,' by a person within the meaning of the act, and '(3) that the interference or attempted interference was by threats, intimidation or coercion'" (citation omitted).  Williams v. O'Brien, 78 Mass. App. Ct. 169, 172-173 (2010).
      "Coercion" under the MCRA is defined as "the application to another of such force, either physical or moral, as to constrain [her] to do against [her] will something [she] would not otherwise have done" (citation omitted).  Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474, cert. denied, 513 U.S. 868 (1994).  Coercion need not involve physical force.  Buster v. George W. Moore, Inc., 438 Mass. 635, 646-647 (2003) ("we have recognized that coercion may take various forms, and we have not limited its scope to actual or attempted physical force").
      After Murphy refused Gibson's request for photocopies, Gibson told Divris that she needed the photocopies to challenge her conviction.  The complaint states a plausible claim that Gibson had a constitutional right to obtain the photocopies she requested.  Gibson alleges that Divris used that denial of photocopies to press Gibson to become an informant.  These facts, if proven, are sufficient to establish that Gibson's exercise or enjoyment of rights secured by the Constitutions or laws of either the United States or the Commonwealth had been interfered with, or that an attempt was made to interfere with them, and that the interference or attempted interference was by threats, intimidation, or coercion.  See Planned Parenthood League of Mass., Inc., 417 Mass. at 474.  The MCRA claim against Divris should not have been dismissed.
      e.  Eighth Amendment claim.  Gibson requested damages under 42 U.S.C. § 1983 against Murphy for allegedly violating her rights under the Eighth Amendment to the United States Constitution by calling her a "rat snitch" in front of other inmates.  "Under the Eighth Amendment, 'prison officials have a duty to protect prisoners from violence at the hands of other prisoners.'"  Lakin v. Barnhart, 758 F.3d 66, 70 (1st Cir. 2014), quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994).  "[A] prison official violates an inmate's Eighth Amendment right against cruel and unusual punishment 'based on a failure to prevent harm' to the inmate only under two circumstances:  'the inmate must show that [she] is incarcerated under conditions posing a substantial risk of serious harm,' and the prison official must have acted, or failed to act, with 'deliberate indifference to inmate health or safety'" (citation omitted).  Lakin, supra.
      To state the obvious, correctional staff should not call an inmate a "rat" or "snitch," and doing so may place an inmate in danger of retaliation or violence from other inmates.  Such an action might, depending on the surrounding circumstances, violate an inmate's right to be free from cruel and unusual punishment under the Eighth Amendment and art. 26 of the Massachusetts Declaration of Rights.  For example, this court has recognized the danger of correctional officers labeling inmates a "snitch" in front of other inmates in the context of negligence claims brought under the Massachusetts Tort Claims Act by an inmate who was later stabbed.  See Williams, 78 Mass. App. Ct. at 175-176 (holding that correctional officers' labeling plaintiff "a snitch" in front of other inmates constituted "deliberate acts that placed [the plaintiff] in jeopardy").  Numerous Federal circuit court decisions support the proposition that a claim by an inmate that a staff member labeled them a snitch, even without alleging actual physical harm, would survive a motion to dismiss, see, e.g., Benefield v. McDowall, 241 F.3d 1267, 1270-1272 (10th Cir. 2001); Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984), and even a motion for summary judgment, see, e.g., Irving v. Dormire, 519 F.3d 441, 447, 450-451 (8th Cir. 2008); Valandingham v. Bojorquez, 866 F.2d 1135, 1137-1138 (9th Cir. 1989).  Nonetheless, we believe that Gibson's claim is distinguishable and properly dismissed.
      Gibson alleged that when she asked Murphy for paperwork to enable Gibson to file a grievance against Murphy for denying the photocopies, Murphy, "very loudly in front of a lot of inmates," said, "[G]o ahead and rat on me rat snitch."  The allegations in the complaint do not plausibly support a claim that Murphy's use of the term "rat snitch" under these circumstances placed Gibson at risk of danger from other inmates.  This case is quite unlike Reeves v. King, 774 F.3d 430, 433 (8th Cir. 2014), which concluded that a reasonable correctional officer would have known that calling the plaintiff "a snitch for reporting on a prison nurse who was bringing contraband into the prison would violate his constitutional right to protection from harm."  That plaintiff was at risk of retaliation by other inmates because the prison nurse's actions were "beneficial" to the other inmates.  Id. at 432.  The court distinguished the situation here:  labeling an inmate a "snitch" for reporting correctional staff for "mistreatment of inmates" does not inherently create "a substantial risk of serious harm," because "inmates are unlikely to retaliate against a fellow inmate for seeking to end abuse by prison guards."  Id. at 433.  Here, Murphy's denial of the photocopies was not beneficial to fellow inmates.  Gibson does not allege that, as a consequence of being called a rat snitch by Murphy, other inmates threatened or injured her, nor does the complaint plausibly suggest that such consequences would ensue.  This claim was properly dismissed.
      Conclusion.  We reverse so much of the order dismissing Gibson's claims (1) for declaratory and injunctive relief concerning the constitutionality of the DOC regulation, 103 Code Mass. Regs. §§ 478.00, and the corresponding NCCI-Gardner policy, and (2) against Divris alleging a violation of the MCRA, and we remand the matter for further proceedings consistent with this opinion.  In all other respects, the order of dismissal is affirmed.
                                          
 
So ordered.
footnotes

          [1] Carol Mici; Matthew Divris; and Carolyn Murphy.  These defendants are sued in both their individual and official capacities.  Although in the plaintiff's complaint Murphy's first name is spelled "Carloin" and "Carolin," we use the correct spelling of her name as supplied in the defendants' brief.
           Insofar as Mici, who has since retired, was sued in her official capacity, the current Commissioner of Correction is automatically substituted as a party for those claims.  See Mass. R. Civ. P. 25 (d) (1), 365 Mass. 771 (1974).  See also Hafer v. Melo, 502 U.S. 21, 25 (1991) (when State officials sued in their official capacities in Federal court "die or leave office, their successors automatically assume their roles in the litigation").
               [2] Gibson identified herself by she or her pronouns during oral argument and we will follow suit.
               [3] At the time Gibson filed her complaint, she was incarcerated at NCCI-Gardner.  She has since been transferred to the Souza-Baranowski Correctional Center.
               [4] The complaint is unclear as to what Gibson was seeking:  at one point it alleges that she sought "cop[ies] of the ballistic evidence" so that her ballistic forensic expert could "examine" it; at another point it alleges that she sought "reports."  We infer that Gibson was seeking documentary evidence.
               [5] In the copy of the DOC regulation included in the record appendix, the "[d]efinitions" section appears in § 478.06.  However, the "[d]efinitions" section of the DOC regulation appears in § 478.05 in the official version available on the DOC's website.  See 103 Code of Massachusetts Regulations §§ 478.00, https://www.mass.gov/doc/cmr-478-library-services
/download [https://perma.cc/X3RH-PRJR].  Both versions are dated May 5, 2017.  Importantly, in the definition for "Original Legal Documents" the only differences are capitalization and one says "his/her" and the other says "his or her."  Similarly, the "Photocopies" section appears in § 478.11(4) in the copy in the record appendix, and in § 478.10(4) in the official version.  The relevant language of the two versions is identical.  All citations to regulations in this opinion are to the official version accessible on the Massachusetts government website.
          [6] The claim seeking a declaratory judgment was properly brought against the DOC and DOC officials.  General Laws c. 231A, §§ 1-9, "expressly includes a limited waiver of sovereign immunity for government agencies and officials with regard to determinations of right, duty, status, or other legal relations" under statute or regulation "with regard to the legality of administrative practices and procedures" and preserves "sovereign immunity for declaratory relief only as to 'the governor and council [and] the legislative and judicial departments'" (citation omitted).  Nordberg v. Commonwealth, 96 Mass. App. Ct. 237, 244-245 (2019).
               [7] At argument, the DOC conceded that Gibson could be transferred back to NCCI-Gardner.
               [8] Gibson's claim relies on the first sentence of G. L. c. 231A, § 2, which states that declaratory judgment "may be used to secure determinations of right, duty, status or other legal relations under . . . administrative regulation, including determination of any question of construction or validity thereof which may be involved in such determination."  This sentence does not require that the challenged action have "been consistently repeated."  See St. George Greek Orthodox Cathedral of W. Mass., Inc. v. Fire Dep't of Springfield, 462 Mass. 120, 124 (2012) (relying upon first sentence of G. L. c. 231A, § 2, to find existence of actual controversy where matter involved dispute over validity of ordinance); Holden v. Division of Water Pollution Control, 6 Mass. App. Ct. 423, 428 (1978).  The "consistently repeated" requirement is only in the second sentence of § 2.  In any event, the defendants do not claim that their actions were not in accord with their interpretation of the regulation.  To the contrary, they argue that their interpretation of "original legal documents" was reasonable and entitled to deference.  See 103 Code Mass. Regs. §§ 478.05, 478.10(4)(a) (2017).  This permits the assumption that their actions in this case have "been consistently repeated in similar cases."  Henderson, 49 Mass. App. Ct. at 458 n.10, quoting Kenney v. Commissioner of Correction, 393 Mass. 28, 31 n.6 (1984).
          [9] To name but a few examples:  Commonwealth v. Gaines, 494 Mass. 525, 527, 531-532, 547 (2024) (defendant relied upon new evidence obtained through public records request in support of motion for new trial, which was allowed, and order was affirmed on appeal); Commonwealth v. Mazza, 484 Mass. 539, 547, 551-552 (2020) (reversing order denying motion for new trial and vacating convictions based on new evidence discovered through public records requests); Commonwealth v. Ellis, 475 Mass. 459, 465, 481 (2016) (affirming allowance of motion for new trial supported by new evidence obtained through public records requests).