# United States Court of Appeals
## For the First Circuit

No. 13-2210

DAVID LAKIN,

Plaintiff, Appellant,

v.

PATRICIA BARNHART, in her individual capacity as
Warden of the Maine State Prison & MARTIN MAGNUSSON,
in his individual capacity as Commissioner,
Maine Department of Corrections,

Defendants, Appellees,

JOHN DOE, in his individual capacity as
Unit Manager, Maine State Prison,

Defendant.

No. 13-2211

GERARD LANDRY,

Plaintiff, Appellant,

v.

PATRICIA BARNHART, in her individual capacity as
Warden of the Maine State Prison & JOSEPH PONTE,
in his individual capacity as Commissioner,
Maine Department of Corrections,

Defendants, Appellees,

JOHN DOE, in his individual capacity as
Unit Manager, Maine State Prison,

Defendant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, <u>U.S. District Judge</u>]

————————————

Before

Thompson, <u>Circuit Judge</u>,
Souter,[*] <u>Associate Justice</u>,
and Kayatta, <u>Circuit Judge</u>.

————————————

<u>Verne Paradie</u> for appellants.
<u>James E. Fortin</u>, Assistant Attorney General, with whom <u>Janet T. Mills</u>, Maine Attorney General, was on brief, for appellees.

————————————

July 7, 2014

————————————

————————————

    [*]  Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, <u>Associate Justice</u>.**

The appellants in these consolidated cases, David Lakin and Gerard Landry, are inmates in the Maine State Prison. Their actions charge the appellees, officials in the Maine Department of Corrections, with deliberate indifference to a substantial risk that inmates would use padlocks issued to them by the Prison to assault fellow inmates such as the appellants. See <u>Farmer</u> v. <u>Brennan</u>, 511 U.S. 825 (1994). We agree with the district court that Lakin and Landry have failed to raise a triable issue of substantial risk of assault by padlock and therefore affirm the summary judgment for appellees.

I.

While inmates at the Maine State Prison, David Lakin and Gerard Landry each suffered serious injury in assaults by other inmates using prison-issued padlocks as weapons. In 2010, Lakin was assaulted by two or possibly three others, at least one of whom struck Lakin in the head, face and neck with a padlock. Roughly a year later, Landry was assaulted by another inmate who struck Landry's head and torso with a padlock.

From January 2004 through June 2012, there were at least 372 reported inmate-on-inmate assaults at the Prison, in at least 17 of which padlocks were weapons. Beginning in 2007 and extending through 2012, the total number of all varieties of reported assaults at the Prison rose significantly from past levels, with at

-3-

least 25 in 2007, 28 in 2008, 50 in 2009, 49 in 2010, 52 in 2011, and 86 in the first nine months of 2012.[1]  There were generally no more than two reported padlock assaults annually during this six-year time period, with the notable exception of 2010, when six were reported.  See Lakin v. Barnhart, 2013 WL 5407213, at *1 (D. Me. 2013) (noting that there were no reported padlock assaults in 2007, two in 2008, two in 2009, six in 2010, one in 2011, and one in 2012); Landry v. Barnhart, 2013 WL 5407220, at *1 (D. Me. 2013) (same).  The summary judgment record does not contain any indication of the level of violence that is customary or generally to be expected at prisons the size and character of Maine's.

Nor does the record serve to explain the spike in violence culminating in the general level for 2012 or the six padlock assaults in 2010.  One can only say that the overall violence accelerated roughly with the arrival of a new warden, appellee Patricia Barnhart, whose tenure began in 2009 and continued through the close of discovery in 2012.  Barnhart was a successor of appellee Martin Magnusson, who served as Commissioner

---

[1]  The Maine Department of Corrections maintains a database of reported inmate-on-inmate violence.  The parties agree that the database does not capture the full spectrum of violence that occurs in the Prison.  The statistics on reported assaults cited here include the figures from the database, with the assaults on Lakin and Landry added.  See Lakin v. Barnhart, 2013 WL 5407213, at *1 (D. Me. 2013); Landry v. Barnhart, 2013 WL 5407220, at *1 (D. Me. 2013).

of the Maine Department of Corrections until he retired in 2011 and was replaced by appellee Joseph Ponte.

The record does disclose, however, why padlocks get into prisoners' hands. Maine law requires prison authorities to provide inmates with reasonable means to secure their belongings safely. See 34-A M.R.S. §3031(7) ("Any person residing in a correctional or detention facility has a right to . . . [a] reasonably secure area for maintenance of permitted personal effects."). The Prison accordingly has a longstanding practice[2] and informal policy of issuing footlockers with padlocks to all inmates except those housed in segregated units.[3] See Appendix in No. 13-2211 ("App'x") at 18 (quoting the Prison Handbook: "The prisoner is responsible to secure his personal property in his assigned storage box with [a] padlock when leaving his cell.").

Although they knew that inmates sometime used padlocks to assault other prisoners, Magnusson and Barnhart were both of the opinion that providing padlocks actually lowers the level of violence by reducing theft, which often precipitates inmate

---

[2] The record does not contain precise information on when the practice began. However, it was extant well before Barnhart began her tenure as Warden. The record indicates that Magnusson was employed by the Maine Department of Corrections in the early 1970s and that the practice has been in effect "for as long as [he] can remember." App'x 18, 29-30.

[3] The policy does not extend to the most dangerous prisoners, who are housed in segregation, because those inmates are allowed very few personal possessions and are kept "locked down" most of the time. App'x 19.

conflict. The pertinence of this general observation is uncertain, however, since both Lakin and Landry were housed in the Prison's "close custody" unit, where prisoners with "serious" criminal backgrounds are placed. App'x 102. Inmates in that unit are kept in individual cells that lock automatically when the doors are closed. Accordingly, only around half of the inmates in the unit actually use the padlocks to secure their belongings. In the experience of Dwight Fowles, the manager of the close custody unit, theft "happens from time to time" in the unit but is "not a real regular occurrence." App'x 111.

The Prison has no practice or policy of taking away a padlock for any reason, even after the inmate has used it to assault another prisoner. Barnhart testified that she sees no need to take away such an inmate's padlock, because the inmates are "in a prison where if they want to find a weapon, they will find a weapon." App'x 103. Instead, the Prison relies on a number of policies designed to deter inmate violence, such as specific housing placements, segregation of particularly dangerous inmates, and individual management plans.

II.

A.

Lakin and Landry filed complaints in federal district court under 42 U.S.C. § 1983 and the Maine Civil Rights Act, 5 M.R.S. § 4682, pleading violations of their Eighth Amendment

-6-

rights.[4]  The complaints charge that appellees' failure to take adequate measures to protect inmates at the Prison from padlock assaults violated Lakin's and Landry's Eighth Amendment right against subjection to cruel and unusual punishment.  Specifically, Lakin and Landry alleged that defendant "prison officials were aware of the use of padlocks as weapons in inmate assaults on each other, but despite that knowledge, continued to allow inmates to possess such items and continued to disburse such items to inmates entering prison."  App'x 13.

B.

Following discovery, the magistrate judge recommended that appellees' motions for summary judgment be granted.  The magistrate found that "the number of padlock assaults per year has typically been relatively low," and concluded that the joint "summary judgment record does not demonstrate a long-standing

---

[4] Lakin and Landry have at all times been represented by the same counsel, and their complaints are virtually identical, other than their different recitations of the facts relating to the assaults each suffered.  Compare Appendix in 13-2211, at 11-15 (Landry Complaint) with Appendix in 13-2210, at 12-16 (Lakin Complaint). Lakin's and Landry's cases were classified as related, assigned to the same district court judge and referred to the same magistrate judge for purposes of managing discovery.  The magistrate judge, on the parties' joint motion, consolidated the cases for purposes of allowing joint discovery "on the issue of defendants' policy of issuing padlocks to inmates at the Maine State Prison."  Report of Telephone Conference and Amended Scheduling Order, Dkt No. 27, Lakin v. Barnhart, 11-cv-00332; Dkt  No. 25, Landry v. Barnhart, 12-cv-00016.  On appeal, the parties filed separate briefs in the two cases, but the briefs are, again, virtually identical other than their recitations of the facts relating to the assaults.  We resolve Lakin's and Landry's appeals by joint opinion.

history of frequent padlock assaults." Lakin, 2013 WL 5407213, at *14-15; Landry, 2013 WL 5407220, at *14-15. The magistrate therefore recommended dismissal of the claims because there were no issues of fact with the potential to meet a plaintiff's burden of demonstrating that the Prison's policies and practices created a "substantial risk" that they would be assaulted with a padlock. At the same time, the magistrate cautioned that her conclusion was merely "a reflection upon the snapshot presented by the summary judgment record" and was not to be construed "as foreclosing any future challenge to the padlock policy" supported by an adequate record. Lakin, 2013 WL 5407213, at *15; Landry, 2013 WL 5407220, at *15.

The district court, again in separate but materially identical opinions, adopted the magistrate's recommendations and granted appellees' motions for summary judgment dismissing the complaints. The district court "agree[d] with the Magistrate Judge" that the summary judgment record was insufficient to "generate[] a genuine dispute of material fact" as to whether "providing inmates with padlocks subjected [Landry and Lakin] to conditions posing a substantial risk of serious harm" in violation of the Eighth Amendment. Lakin, 2013 WL 5407213, at *7; Landry, 2013 WL 5407220, at *7. We review the district court's judgment de novo, under the rule that summary judgment is called for when "there is no genuine dispute as to any material fact and the movant

-8-

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

A.

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988) (ellipsis omitted)); see also ibid. ("Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." (internal citation, quotation marks, and brackets omitted)). Not "every injury suffered by one prisoner at the hands of another," however, "translates into constitutional liability." Id. at 834. Instead, a prison official violates an inmate's Eighth Amendment right against cruel and unusual punishment "based on a failure to prevent harm" to the inmate only under two circumstances: "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and the prison official must have acted, or failed to act, with "deliberate indifference to inmate health or safety." Ibid. (internal quotation marks omitted).

The complaints make clear that the only source of substantial risk alleged and at issue here is the Prison's policy and practice of issuing padlocks to inmates, despite appellees' knowledge that "several inmates at the . . . Prison have been assaulted by other inmates using padlocks as weapons." App'x 13. But the complaints do not allege, nor do Lakin and Landry assert on appeal, any practice or policy on the part of the Prison that might account for the rise in padlock assaults in 2010, and the pleadings and briefs do not attempt to connect the overall increase in violence at the Prison from 2007 to 2012 as an explanatory context to the claims that are pleaded in the complaints. For that matter, the complaints do not mention the overall spike in violence that occurred in the Prison from 2007 to 2012, and neither Lakin nor Landry has ever proffered any explanation for the dramatic upswing; they do not allege that the arrival of appellee Barnhart as the Prison's new warden is pertinent to the sequence of violence over that period, nor is there any indication in the summary judgment record of an arguably relevant change in Prison practice or policy following the arrival of the new Prison administration. Thus, what is at stake in this appeal is the constitutionality of the Prison's padlock policy and practice, as viewed in a spare record, nothing more.

The district court granted summary judgment for appellees based on its determination that the summary judgment record described no ground on which a reasonable jury could conclude that inmates at the Prison faced a substantial risk of being assaulted with a padlock by their fellow inmates. That determination was sound.

The Supreme Court has characterized a "substantial" risk as one that is "objectively intolerable," Farmer, 511 U.S. at 846, and in a case much like this at least one of our sister Circuits has equated a "substantial" risk with one that is "pervasive," see Beaton v. Tennis, 460 F. App'x 111, 114-15 (3rd Cir. 2012) (affirming grant of summary judgment dismissing Eighth Amendment claim concerning the danger of padlocks in prison, where assaults involving a padlock "typically occur[red] at a rate of 1 or 2 per year").

This Circuit has not yet had occasion to attempt precision in explaining when the risk of violence among inmates is sufficiently "substantial" to satisfy the first prong of Farmer, and we need not close in on it now. It suffices, rather, to say that, wherever the line between substantial and insubstantial risks may lie, the risk as described here falls well within the zone of those too insubstantial for an Eighth Amendment claim. As already recounted, the annual occurrences of padlock assaults at the Prison

have generally been few, both in absolute number and as a percentage of the total inmate violence. There were only six such assaults even at the height of disorder, in 2010, and the numbers quickly receded to their norm of one or two annually. To be sure, one assault, of any sort, is unacceptable, and there is no dispute that these assaults caused Lakin and Landry serious harm. But we cannot say that a small number of assaults involving the use of a particular prison-issued item, without more, is sufficient to sustain the conclusion that providing the item without restriction created "conditions posing a substantial risk of serious harm" rising to the level of constitutional violation. Farmer, 511 U.S. at 834.

Whether "more" evidence in appellants' favor might have been presented, we simply do not know. Given the low numbers involved, it seems unlikely that a stronger case for substantiality could have been made out, but in any event no such information was presented. The record, for example, is bare on (i) the population of inmates over time, whether fluctuating or steady; (ii) the level of violence that might be expected at an institution the size and character of the Prison; (iii) any change in the violent potential of inmates housed in the Prison; (iv) any relevant changes in the Prison's practices or policies that might account for the increase in overall inmate violence, the rise in padlock assaults in 2010,

or their drop thereafter; and (v) any explanation for the sequence of developments correlated with Barnhart's arrival as warden.

To be clear, we do not suggest that there is some freestanding, numerical threshold (ex ante or ex post) for the level of violence among inmates that is necessary for its risk to be considered "substantial" under Farmer. After all, Farmer itself involved a sui generis danger that apparently had never before materialized at the institution involved. See id. at 829-30, 848 (a biological male transsexual who "project[ed] feminine characteristics," had been beaten and raped after being placed in the general male prison population at a high security prison). But not every risk carries an inherent threat at a substantial level, or of severity beyond the norms, and here the only record evidence Lakin and Landry offer to suggest that the risk of padlock assaults was "substantial" is the relatively low frequency with which they occurred at the Prison during the period leading up to the assaults they suffered. This, standing alone, does not create a genuine issue of material fact as to whether the risk was sufficiently substantial to support an Eighth Amendment claim under Farmer.[5]

---

[5] Given our holding that Lakin and Landry did not make the showing sufficient to entitle them to a trial on the first condition necessary for liability under Farmer, we do not reach the separate question whether the appellee prison officials demonstrated "deliberate indifference" to the risk of inter-inmate padlock assaults. Farmer, 511 U.S. at 828. On appeal, Lakin and Landry focus almost exclusively on this second Farmer prong. It is enough to say that evidence and arguments exists on each side of this issue.

Finally, because the district court was on firm ground in finding no potential for a reasonable jury to determine that defendants violated Landry and Lakin's Eighth Amendment rights, we conclude that the trial court likewise correctly held that appellees were entitled to qualified immunity.

IV.

The judgment of the district court is affirmed.

*It is so ordered.*