# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2019

No. 18-30323

Lyle W. Cayce

Clerk

AMY MCDONALD NOBRE, on behalf of K.M.C.; CHASTITY GUIDRY, on behalf of L.G.,

        Plaintiffs - Appellants

v.

LOUISIANA DEPARTMENT OF PUBLIC SAFETY; JERRY GOODWIN,

        Defendants - Appellees

---

Appeal from the United States District Court
for the Western District of Louisiana

---

Before HIGGINBOTHAM, ELROD, and HO, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The mother of a Louisiana inmate filed suit against state prison officials alleging Eighth Amendment violations and state-law wrongful death and survival claims arising out of her son's death. A year later, she learned that her son had two children. Under Louisiana law, these children were the proper parties to bring the action, and so she substituted their natural tutors, Amy Nobre and Chastity Guidry, as plaintiffs. But the substitution occurred after expiration of the statutory limitations period. We must determine whether the substitution relates back to the date of the initial complaint. We hold that it

No. 18-30323

does, REVERSE the district court's dismissal of Nobre and Guidry's wrongful death and 42 U.S.C. § 1983 claims, and remand for further proceedings.

I.

According to the pleadings, inmates arriving at the Louisiana Department of Corrections' David Wade Correctional Center were routinely issued two combination locks. In the first two months of 2016, the Center experienced two incidents in which an inmate attacked another using a lock as a weapon. The Department nonetheless allowed inmates to retain locks. On February 11, 2016, while inmate Kenneth Cotton was sleeping in his bed, another inmate, Anthony Tellis, beat Cotton, striking his head with a lock and fracturing his skull. Prison staff transported Cotton to a hospital, where he underwent brain surgery, but died from his injuries on February 20, 2016.

On September 14, 2016, Cotton's mother, Enriqueta Moore, filed a petition for damages in Louisiana's Second Judicial District Court for the Parish of Claiborne, naming the attacker Tellis, the Department of Corrections, the David Wade Center's warden, and the Department's insurers as defendants. Moore alleged that the defendants failed to protect Cotton from bodily harm, allowed inmates to possess combination locks that defendants knew would be used as weapons, failed adequately to train staff to supervise prisoners, failed to provide timely medical attention to Cotton, caused Cotton physical harm, and otherwise committed acts of negligence. Moore also alleged that the Department, warden, and their agents inflicted extreme emotional distress upon her, deceiving her as to Cotton's health status following the attack, and preventing her from seeing or speaking with her son between the attack and his death. Moore sought damages under Louisiana's wrongful death and survival action statutes, and Section 1983. As Cotton's mother, Moore alleged she was the proper party to bring the action.

No. 18-30323

On October 20, 2016, the Department and the warden filed a Notice of Removal in the United States District Court for the Western District of Louisiana. They stated that Moore's suit "assert[s] federal claims under 42 U.S.C. § 1983," and that the district court "ha[d] jurisdiction of this cause of action under 28 U.S.C. § 1331, federal question jurisdiction."

On March 8, 2017, Moore moved for leave to file an amended complaint. Since filing her original complaint, Moore had learned that Cotton had two minor children. Under Louisiana law, these children were the proper parties to bring the action, and so Moore substituted the children's natural tutors— their mothers Amy Nobre and Chastity Guidry—as plaintiffs. The amended complaint otherwise "reiterate[d] all allegations, theories of recovery and remedies which were listed and set forth in the allegations and prayer of the original Complaint." The district court granted Moore's motion for leave to amend.

The Department and warden moved to dismiss Nobre and Guidry's action as untimely. Pointing out that the district court looks to state law for the limitations period in Section 1983 suits, the defendants argued that the relevant limitations period under Louisiana Civil Code Article 3492 was one year running from Cotton's death. Although Moore's original complaint was filed during the limitations period, Moore was not the proper party to bring the action. The amended complaint substituted the correct plaintiffs, but was filed sixteen days after the limitations period had expired.

Nobre and Guidry responded that the amended complaint related back to the filing of the original complaint. While Moore only learned of Cotton's children in March 2017, Nobre and Guidry argued the defendants knew of the children earlier. The plaintiffs attached for the first time a "Master Record Inquiry," a document prepared by the David Wade Correctional Center in which Cotton was described as the father of two children.

No. 18-30323

Refusing to consider evidence beyond the pleadings, the district court granted the defendants' motion to dismiss. "Out of an abundance of caution," the district court analyzed the relation-back issue under both Louisiana law and Rule 15(c). It held that, under both, relation back was not permitted because the pleadings did not establish that the defendants knew of Cotton's children. Nobre and Guidry appeal the dismissal of their wrongful death claim and associated Section 1983 claim for wrongful death damages.[1]

## II.

## A.

We have jurisdiction to hear this appeal. The well-pleaded complaint presents a federal question.[2] It alleges that Cotton was an inmate in state custody, that state officials failed to protect him and failed to provide him with adequate medical care, and that he died as a result. These facts support colorable claims under Section 1983 to redress violations of Cotton's rights under the Eighth and Fourteenth Amendments[3] to be free from officials' deliberate indifference to substantial risks of serious harm, including via the provision of adequate medical care,[4] and thus a federal question. The appeal challenges a final judgment of the district court.[5] We review the district court's grant of a motion to dismiss de novo.[6] In reviewing such a decision, we accept

---

[1] Appellants' counsel stated during oral argument that appellants have waived their survival related claims.

[2] The amended complaint incorporates by reference Moore's original complaint.

[3] If Cotton was a pretrial detainee—unlikely, given that he was incarcerated in the Center since 2006—his claims would arise only under the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) ("The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."); *id.* at 643 (holding that a pretrial detainee may challenge "episodic acts or omissions" of individual officials where these officials acted with deliberate indifference).

[4] *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 754–55 (5th Cir. 2001).

[5] 28 U.S.C. § 1291.

[6] *Hines v. Alldredge*, 783 F.3d 197, 200–01 (5th Cir. 2015).

No. 18-30323

all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff.[7]

## B.

As Section 1983 does not provide a relevant limitations period, we look to the law of the forum state.[8] Here, the parties agree that in analogous delictual actions under the Louisiana Civil Code, plaintiffs must file within one year of the decedent's death.[9]

Cotton died on February 20, 2016. Moore's original complaint was filed on September 14, 2016, within the relevant limitation periods; Nobre and Guidry's amended complaint was filed on March 9, 2017, after that period had expired. To determine whether the amended complaint relates back to Moore's original complaint, the court applies Federal Rule of Civil Procedure 15(c)(1).[10] This Rule provides:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

---

[7] *Id.* at 201.

[8] *Braden v. Texas A & M Univ. Sys.*, 636 F.2d 90, 92 (5th Cir. 1981).

[9] LA. CIV. CODE art. 2315.2.

[10] *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (applying state-law statute of limitations and Rule 15 for relation back in a Section 1983 suit).

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[11]

Rule 15(c) refers only to amendments changing defendants, but the Advisory Committees' Notes to the Rule state that,

> [R]elation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.[12]

The Louisiana Supreme Court describes the policy of the Louisiana statute of limitations as "afford[ing] a defendant economic and psychological security if no claim is made timely, and . . . protect[ing] him from stale claims and from the loss of non-preservation of relevant proof."[13]

Applying Rule 15(c)(1)(A), we begin by asking whether "the law that provides the applicable statute of limitations"—Louisiana law—allows relation back.[14] Louisiana's relation-back doctrine as applied to the substitution of plaintiffs is governed by the test set out by the Louisiana Supreme Court in *Giroir v. South Louisiana Medical Center*. In that case, the husband of a woman who died during medical treatment sued the hospital under Louisiana's wrongful death and survival statutes.[15] After the limitations period expired, the plaintiffs amended the complaint to add the decedent's children as plaintiffs on both claims.[16] The hospital had actual knowledge of the existence

---

[11] FED. R. CIV. P. 15(c)(1).

[12] FED. R. CIV. P. 15 (1966 Amendment Notes).

[13] *Giroir v. S. La. Med. Ctr.*, 475 So. 2d 1040, 1045 (La. 1985).

[14] FED. R. CIV. P. 15(c)(1)(A).

[15] *Giroir*, 475 So. 2d at 1041–42.

[16] *Id.*

of the children.[17] The Louisiana Supreme Court held that the amended claims related back because they met four criteria: (1) the amended claims arose out of the same conduct, transaction, or occurrence set forth in the original petition—namely, the decedent's death; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiffs—the hospital had actual notice of the children's existence; (3) the new and the old plaintiffs were sufficiently related so that the added or substituted parties were not wholly new or unrelated—addition of the children "d[id] not change the basic underlying claim"; and (4) the defendant was not prejudiced in preparing and conducting its defense.[18]

Here, as in *Giroir*, the amended claims arise out of the same conduct and occurrence set forth in the original complaint, namely the prison's alleged role in Cotton's death. In fact, the amended complaint differs from Moore's original pleading only with respect to who is bringing the claims. Formally, the underlying harms suffered by Cotton's children are independent from those suffered by Moore—this was true also in *Giroir*. But Cotton's children and Cotton's mother are closely related, and the substitution of the decedent's family members as plaintiffs leaves the basic underlying facts and claim unchanged.[19]

Defendants argue that, unlike the defendant hospital in *Giroir*, they lacked knowledge of Cotton's children. The district court accepted this argument, confining its analysis to the pleadings, which alleged that Cotton was the father of the two children but made no mention of the Department's or the warden's knowledge of Cotton's children—an allegation not necessary to

---

[17] *Id.* at 1045.

[18] *Id.* at 1044–45.

[19] *See id.* at 1045 ("Clearly, the children are not wholly new or unrelated to their father with respect to actions based on the death of their mother, and the addition of them as plaintiffs does not change the basic underlying claim.").

state a claim, but relevant to the defense of limitations. This was in error. A plaintiff is not required to anticipate or overcome affirmative defenses, such as expiration of the statute of limitations, in the complaint.[20] When the defendants raised the affirmative defense of expiration of the limitations period in their motion to dismiss, the court was not prohibited from considering sources beyond the pleadings to inform the relation-back analysis.[21]

It was also error for the district court to hold that the Master Record Inquiry's meaning was subject to reasonable dispute. That document's meaning is not equivocal. It states of Cotton, "Children: 02." The document unambiguously indicates that the Department—which produced and maintained this document—knew of Cotton's two children. According to the district court, while the Master Record Inquiry records Cotton as having two children, it provides "no proof that these children are filiated to Cotton." But the requirement of filiation, that is, a judicial determination of paternity,[22] was misplaced. Under Louisiana law, "all children have the right to bring an action for wrongful death" of their parent.[23] However, children born out of wedlock

---

[20] *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (finding "no basis for imposing on the plaintiff an obligation to anticipate" an affirmative defense and to address it in the complaint); *see also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) ("[C]omplaints do not have to anticipate affirmative defenses to survive a motion to dismiss."); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009) ("[A] plaintiff need not plead facts responsive to an affirmative defense before it is raised.").

[21] *Woods Expl. & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1300 (5th Cir. 1971) (holding that an amendment related back where "[t]he compendious record in this case justifies our conclusion that no one was litigating in darkness"); *see also U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516–18 (6th Cir. 2007) (holding that extrinsic evidence can be considered in determining whether a defendant was on notice of the plaintiff's claims for the purpose of Rule 15(c)(2)); 6A CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. CIV. § 1497 (3d ed.) (Apr. 2019 update) (describing decisions that have held "it is sufficient if the opposing party was made aware of the matters to be raised by the amendment from sources other than the pleadings," and commenting that "[t]his position seems sound since it is unwise to place undue emphasis on the particular way in which notice is received").

[22] Filiation, BLACK'S LAW DICTIONARY (11th ed. 2019).

[23] *Jenkins v. Mangano Corp.*, 774 So. 2d 101, 103 (La. 2000).

face an additional proof in their claim. An individual born out of wedlock is deemed the child of the parent only where the individual's "filiation to the parent has been determined in the manner provided by law,"[24] namely by "an action to prove paternity" under article 197 of the Code.[25] Therefore, where an illegitimate child of the decedent brings a wrongful death claim "[a] filiation action inherently accompanies [the] illegitimate child's wrongful death . . . action[,] [e]ven if an illegitimate child plaintiff does not specifically plead a filiation action."[26] Filiation can be established by the father's formal acknowledgement—being named on the child's birth certificate—or by clear and convincing evidence of informal acknowledgment—for example, writings, the father's "living in concubinage with the mother in his home at the time of the child's conception," sharing a common surname, or the father's representations to his community.[27] Here, the Master Record Inquiry indicates that Cotton's marital status was "single," and that, at least to prison officials, he acknowledged his paternity relative to two children, both presumably born out of wedlock. If this is accurate, proof of filiation will be part of Nobre and Guidry's burden in this case. But it is not a prerequisite to finding that the defendants knew Cotton had children for purposes of the relation-back notice analysis.

---

[24] LA. CIV. CODE art. 3506(8).

[25] *Id.* art. 197. "A biological relationship between the tort victim and the plaintiff child is a 'critical element' of a claim arising under Louisiana Civil Code article 2315. A man is presumed to be a child's father when the child is born during his marriage to the mother or 'within three hundred days from the date of the termination of the marriage.' If the child's filiation is not presumed, the child can initiate an action to establish paternity under Louisiana Civil Code article 197 to prove paternity in a lawful manner." *Henderson v. Turner*, 2012 WL 3109482, at *3 (M.D. La. July 31, 2012) (citations omitted).

[26] *Henderson*, 2012 WL 3109482, at *4.

[27] *Jenkins*, 774 So. 2d at 103; *Henderson*, 2012 WL 3109482 at *4 (citing LA. CIV. CODE art. 197 cmt. C).

Again to *Giroir*, the Louisiana Supreme Court found that the defendant hospital "received actual notice of the existence of Mrs. Giroir's children prior to her death" on the basis of the patient's mention of children and a nurse's meeting with her daughter:

> In a psychiatric consultation report dated October 15, 1979, Dr. Ronald M. Bennett, Medical Director of the Terrebonne Mental Health Center, informed [the hospital's] Clinical Social Worker, that Mrs. Giroir expressed anxiety about whether her grandchildren were being fed well similar to the anxiety she experienced when her son was in Viet Nam. [The hospital's] registered nurse, testified that she took Mrs. Giroir to Ochsner's Hospital for a CAT scan on March 13, 1980, and Mrs. Giroir's daughter accompanied them. General references to visits or communications with Mrs. Giroir's "family" and "family members" appear in the [hospital] nursing notes and records made during her illness.[28]

The decedent in *Giroir* was the plaintiffs' putative mother, and the plaintiffs were apparently born in wedlock. But the *Giroir* court did not require proof or corroboration of these facts to support the hospital's knowledge of the children for purposes of its relation-back analysis. Mention of children in defendant's records was sufficient to satisfy the third criterion of *Giroir*'s relation-back test. We hold that, like the hospital in *Giroir*, the Department and the warden had knowledge of Cotton's children.

Lastly, we consider prejudice. Nobre and Guidry's amendment came sixteen days after expiration of the limitations period, somewhat later than the three-day delay in *Giroir*.[29] But the defendants present no indication that allowing the amendment to relate back would prejudice their capacity to

---

[28] *Giroir*, 475 So. 2d at 1042.
[29] *Id.* at 1045.

defend the suit, for example, that they would be deprived of relevant proof.[30] "[N]o essential protective purpose of the prescriptive statute is violated by permitting relation back of the post prescription amendment based on the same factual situation pleaded in the original timely petition."[31]

Nobre and Guidry's amendment satisfies all four *Giroir* factors. It would be allowed to relate back under Louisiana law, and is also allowed to relate back under Rule 15(c)(1).

### III.

We REVERSE the district court's dismissal of Nobre and Guidry's wrongful death and Section 1983 claims as time barred and remand for further proceedings.

---

[30] *Id.*

[31] *Id.*